# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**KEVIN R. DUNAY,**

      **Petitioner,**

   **v.**                  **Case No. 22-CV-543**

**BRIAN CAHAK,**

      **Respondent.**

---

## DECISION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DISMISSING CASE

---

Kevin R. Dunay, a prisoner in Wisconsin custody, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. After entering a no contest plea, Dunay was convicted on December 1, 2017, in Outagamie County Case No. 2015-CF-470 of one count each of sexual exploitation of a child, child enticement, causing a child to view or listen to sexual activity, and causing a child to expose intimate parts. (Habeas Pet. at 2, Docket # 1.) Dunay was sentenced to 12 years of initial confinement followed by 20 years of extended supervision. (*Id.*) Dunay alleges that his conviction and sentence are unconstitutional. For the reasons further explained below, Dunay's petition is denied, and the case is dismissed.

## BACKGROUND

Dunay's conviction stems from sexually explicit online communications occurring over a five-month period between Dunay, a 48-year-old resident of New Jersey, and a 13-year-old girl living in Outagamie County, Wisconsin. (Answer, Ex. 5, *State v. Dunay*, Appeal No. 2019AP1884 (Wis. Ct. App. Mar. 23, 2021), Docket # 10-5 at ¶ 2.) While Dunay initially believed the girl was 18-years-old, after further communication, she told him that she was

only 13-years-old. (*Id.*) Over the five-month period, Dunay and the victim exchanged many sexually explicit images and statements regarding sexual topics. (*Id.* ¶ 3.) After the victim's mother discovered images on the victim's phone depicting the victim's bare breasts, her mother contacted law enforcement. (*Id.* ¶ 4.) Dunay was charged with sexual exploitation of a child, child enticement, causing a child to view or listen to sexual activity, and causing a child to expose intimate parts and pleaded no contest to the four counts before Outagamie County Circuit Court Judge Mark McGinnis. (*Id.* ¶ 5.)

After entering his plea but prior to sentencing, while in the Outagamie County jail, Dunay stated that he would kill Judge McGinnis and the district attorney when he was released. (*Id.* ¶ 6.) The State provided the judge with copies of nineteen telephone calls Dunay had made from jail exhibiting his "vengefulness" and referring to the judge as "the worst" and a "fuckin' piece of shit." (*Id.*) Dunay's sentencing hearing was held on March 8, 2018. (Answer, Ex. 11, Transcript of Mar. 8, 2018 Sentencing Hearing ("Mar. 8 Tr."), Docket # 10-11.) During the hearing, the judge addressed Dunay's telephone calls. (*Id.* at 90.) Dunay acknowledged the recordings and apologized for his "horrendous statements and behavior on the jail telephone." (*Id.* at 82.) He stated that he was just "venting" and would never act on the threats. (*Id.* at 82–83.)

The judge, however, did not believe Dunay's statements of remorse, saying that the jail calls were "consistent with everything I have ever seen from you in the courtroom, with the individual who doesn't accept responsibility, is dishonest, conniving, manipulative." (*Id.* at 90.) He noted that throughout the calls, Dunay consistently blamed everyone but himself for the situation he was in. (*Id.* at 88.) The judge stated that there were "many, many sort of egregious or what you call horrendous or awful comments that make very little sense if one

2

were to conclude that you are someone who has taken full responsibility and you want to move forward and do well." (*Id.* at 89.) The judge told Dunay that in his experience, individuals who make violent threats against the judge, the legal system, the district attorney, law enforcement, and the victim, have poor character. (*Id.* at 87–88.) Thus, Judge McGinnis concluded that he did not believe Dunay accepted responsibility or that he had a good chance of doing well. (*Id.* at 89.) He stated that when he "listened to the recordings and you make very horrendous statements, if I use your term, or threatening and violent statements that are inappropriate on so many different levels, if you use my term, I think that truly is who you are." (*Id.* at 102.) While the State recommended a sentence of 15 years of initial confinement and 10 years of extended supervision, the judge sentenced Dunay to 12 years of initial confinement and 20 years of extended supervision. (*Id.* at 111–12.)

A few weeks after the sentencing hearing, on March 20, 2018, a lieutenant in the Outagamie County Sheriff's Department forwarded an email from a counselor at the Outagamie County jail to Judge McGinnis and the district attorney. (Docket # 1-1 at 2.) In the email, the counselor reported that prior to the sentencing hearing, on February 28, 2018, Dunay threatened to kill himself and that after he was sentenced, he was placed on suicide watch. (*Id.*) The counselor stated that while meeting with Dunay on March 20, Dunay again threatened suicide and stated he planned to "become the monster they made me out to be" while in prison and that upon release, he planned to "kill the judge and other people." (*Id.* at 2–3.) He then stated that while he was not currently suicidal, he had "nine years to plan that." (*Id.* at 3.) The counselor stated that Dunay became increasingly angry and made threats of murder toward the end of their conversation. (*Id.*) After she left, Dunay spent approximately 30 minutes kicking and pounding on the cell door making statements about killing the judge

and the district attorney. (*Id.*) The lieutenant stated that he would assign a team of investigators to follow up on the threats. (*Id.* at 2.)

On August 20, 2018, an officer with the Fox Valley Police Department emailed Judge McGinnis' judicial assistant asking her to pass along an email to the judge. (Docket # 1-1 at 4.) In the email, the officer explained that a member of the Outagamie County Sheriff's department had investigated a case "this past spring in which [the judge was] threatened by an inmate while incarcerated at the Outagamie County Jail." (*Id.*) The officer stated that he too had investigated this inmate for threats made against other public officials involved in his case. (*Id.*) The officer informed the judge that charges had been transferred from the Outagamie County District Attorney's office to the Wisconsin Attorney General's Office regarding the threats made. (*Id.*) The officer stated that Assistant Attorney General Robert Kaiser asked the officer to get "a statement of non-consent" from the judge about the case. (*Id.*) The judge replied to his judicial assistant on August 21, 2018, who replied to the officer with the following message from Judge McGinnis, "I talked with Sgt. Lee. I agree that I did not consent. Thank you." (*Id.*)

On October 11, 2018, Dunay was charged in Outagamie County Case No. 2018-CF-868 related to the threats made to Judge McGinnis and others involved in his case. Soon after, all seven judges in Outagamie County recused themselves from presiding over the case because it related to an Outagamie County judge, prosecutor, and law enforcement officer. (Docket # 1-1 at 24.) Dunay's case was assigned to Waupaca County Circuit Court Judge Troy Nielsen. (Docket # 50 at 27.)

Dunay subsequently filed several post-conviction motions in Case No. 2015-CF-470, including a motion requesting Judge McGinnis recuse himself from post-conviction

proceedings in his case. (Answer, Ex. 13, Transcript of Mar. 21, 2019 Scheduling Conference ("Mar. 21 Tr."), Docket # 10-13 at 3.) During a March 21, 2019, telephone hearing with AAG Kaiser now representing the State, Judge McGinnis noted that Dunay was currently charged with threats made against the district attorney and himself. (*Id.* at 4.) Judge McGinnis stated that he did not "really know the details of that case" as he had only received correspondences from Kaiser's office regarding hearings, in which the judge would simply respond with "thank you" or nothing at all. (*Id.*) Judge McGinnis stated that he had not otherwise provided "any input on it." (*Id.*) AAG Kaiser confirmed that Dunay was being charged with threats made against Judge McGinnis both before sentencing and after, and Judge McGinnis noted that he addressed the threats made before sentencing during the sentencing hearing. (*Id.* at 5.) Judge McGinnis further stated that he received information from law enforcement regarding threats made after sentencing. (*Id.*)

On June 21, 2019, Judge McGinnis held an evidentiary hearing on Dunay's post-conviction motions. (Answer, Ex. 14, Transcript of June 21, 2019, Evidentiary Hearing ("June 21 Tr."), Docket # 10-14.) At the hearing, Judge McGinnis clarified that he had never met AAG Kaiser before this hearing and understood that Kaiser represented the State in the "new case" against Dunay. (*Id.* at 9.) The judge stated that his involvement in that case was "pretty minimal" and that he had not talked to the individual handling the case. (*Id.* at 10.) Judge McGinnis further stated that he was asked several months prior to provide dates in which he was unavailable for trial and he responded to those requests via email. (*Id.* at 161.) He stated he understood that he would be a witness in that case and that he would expect that his testimony would be that he did not consent to the threats. (*Id.* at 162.) Judge McGinnis further stated that Dunay was not the first individual who had threatened him while on the

5

bench. (*Id.* at 167.) He stated that he knew Dunay threatened the district attorney, law enforcement in New Jersey, himself, and potentially others while in the Outagamie County jail and that he addressed the threats at sentencing. (*Id.* at 168.) However, as he sat that day, he could not specifically remember if the threats involved killing him or were just vulgar threats. (*Id.* at 169.) Judge McGinnis stated that his recollection was "more just sort of vulgar threats, just kind of stuff he has done today . . . That's what I kind of remember . . . just disrespectful, aggressive, inappropriate . . . comments." (*Id.*)

On September 4, 2019, Judge McGinnis issued an oral ruling denying Dunay's motion for recusal. (Answer, Ex. 16, Transcript of Sept. 4, 2019 Hearing ("Sept. 4 Tr."), Docket # 10-16.) The judge noted that subsequent to Dunay's sentencing hearing, charges were brought against Dunay involving threats made against him. (*Id.* at 6.) Judge McGinnis stated that he "represented to both attorneys in this case that I have not had any communication with Attorney Kaiser about that case. I have not had any communication verbally with anyone about that case. I have not submitted any documentation on that case, and I really haven't been involved other than I have received e-mails about scheduling" from the victim witness advocate in the attorney general's office. (*Id.*)

Judge McGinnis found that at sentencing, he addressed Dunay's threats and referenced them in the context of assessing Dunay's mindset as related to his risk to reoffend, which was a legitimate consideration for a sentencing court. (*Id.* at 11.) He rejected Dunay's argument that the mere fact that Dunay threatened him or that Dunay faced new criminal charges because of the threats, was sufficient to establish either objective or subjective bias. (*Id.* at 13–14.) Thus, he denied Dunay's motion for recusal. (*Id.* at 14.)

6

Dunay appealed the decision denying recusal, and the Wisconsin Court of Appeals affirmed it on March 23, 2021. (Docket # 10-5.) The Wisconsin Supreme Court denied Dunay's petition for review on May 19, 2021. (Answer, Ex. 8, Docket # 10-8.) Dunay filed a federal habeas petition on May 5, 2022, challenging his conviction on the grounds that he was deprived of his due process right to an impartial court when the judge denied the motion for recusal. (Docket # 1.) Dunay subsequently sought leave to stay his federal habeas proceedings and hold his petition in abeyance while he exhausted a claim of ineffective assistance of appellate counsel. (Docket # 20.) Dunay's motion was granted on March 23, 2023, and the habeas proceedings were stayed. (*Id.*)

On October 22, 2024, Judge McGinnis testified as a witness in Case No. 2018-CF-868. (Docket # 50 at 27–61.) He described receiving the jail calls from the district attorney prior to sentencing and explained that it demonstrated to him that Dunay had little remorse for his conduct as he continually deflected responsibility to others, including the victim, the district attorney, law enforcement, and the judge. (*Id.* at 32–33.) Judge McGinnis testified that law enforcement had informed him that Dunay continued to have communications with people on the outside regarding the judge and others. (*Id.* at 56.) As it had been six years since the sentencing, the judge said that concerned him. (*Id.*) Judge McGinnis was asked whether Dunay ever made any specific threats, such as how he would potentially hurt him, and the judge responded "yes" but "I thought I was told I can't say that" before the question was withdrawn. (*Id.* at 59–60.)

After testifying as a witness in Case No. 2018-CF-868, on November 5, 2024, Judge McGinnis recused himself from further proceedings in Case No. 2015-CF-470 due to his

recent testimony and Dunay's subsequent conviction for threats made against him. (Docket # 45-1 at 2.)

The federal habeas proceedings were reopened on September 11, 2025. (Docket # 28.) Dunay now seeks to expand the record in this case pursuant to 28 U.S.C. § 2254(e)(2) to address what he alleges are false statements made by Judge McGinnis during his October 2024 testimony to avoid disqualification from his post-conviction proceedings in 2015-CF-470. (Docket # 45 at 10–16.) Dunay further alleges that new evidence, in the form of the March 20, 2018, and August 21, 2018, emails referenced above, demonstrates Judge McGinnis made false statements during the March 21, 2019, and June 21, 2019, hearings to distance himself from the 2018-CF-868 case. (*Id.* at 13–14.) Both parties have had the opportunity to supplement the record since the case's reopening. Thus, the petition is fully briefed and ready for decision.

## STANDARD OF REVIEW

Dunay's petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, a writ of habeas corpus may be granted if the state court decision on the merits of the petitioner's claim (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000) (quoting

*Williams v. Taylor*, 529 U.S. 362, 405 (2000)). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> [U]nder the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

*Washington*, 219 F.3d at 628. The court further explained that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" *Id.* (quoting Williams, 529 U.S. at 413).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748–49 (7th Cir. 1997). In *Morgan v. Krenke*, the court explained:

> Unreasonableness is judged by an objective standard, and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565–66 (7th Cir. 2000) (quoting *Williams*, 529 U.S. at 411), cert. denied, 532 U.S. 951 (2001).

Even if AEDPA's statutory requirements are satisfied, a petitioner must still "persuade a federal habeas court that 'law and justice require' relief, as the granting of habeas relief is a discretionary exercise." *Jones v. Cromwell*, 75 F.4th 722, 726 (7th Cir. 2023) (quoting *Brown v. Davenport*, 596 U.S. 118, 134 (2022)). This requires federal courts to apply the Supreme

9

Court's equitable precedents. *Davenport*, 596 U.S. at 134. Accordingly, before a writ of habeas corpus may issue, petitioner must make both a statutory and discretionary showing to obtain relief. *Jones*, 75 F.4th at 726 (citing *Davenport*, 596 U.S. at 134).

### ANALYSIS

Dunay alleges two grounds for habeas relief: (1) that his due process rights were violated when Judge McGinnis declined to recuse himself from presiding over his post-conviction proceedings and (2) that his appellate counsel was ineffective for raising only the judicial recusal issue on direct appeal and failing to raise other meritorious issues. I will address each argument in turn.

> 1. *Due Process Right to Impartial Judge*

Dunay argues that the Wisconsin Court of Appeals unreasonably applied the facts in light of the evidence presented in the State court proceeding when it upheld the trial court's determination that it did not err in declining to recuse itself from ruling on Duany's post-conviction motions. (Docket # 45 at 17–31, citing § 2254(d)(2).) Dunay further argues that the court of appeals unreasonably applied clearly established federal law when it upheld the trial court's application of the law of judicial bias in denying the recusal motion. (*Id.* at 31–43, citing § 2254(d)(1).)

> 1.1 Expansion of the Record Under § 2254(e)(2)

As an initial matter, Dunay seeks to expand the record to add the emails dated March 20, 2018, and August 21, 2018, described above, as well as Judge McGinnis' October 22, 2024, testimony in Case No. 2015-CF-470 and subsequent recusal order dated November 5, 2024. He argues that his proposed expansion is not precluded by § 2254(e)(2). Section 2254(e)(2) provides that, if a prisoner "has failed to develop the factual basis of a claim in

10

State court proceedings," a federal court must not hold an evidentiary hearing on the claim unless the applicant shows: (1) that the claim relies on either a new rule of constitutional law that was previously unavailable or relies on a factual predicate that could not have been previously discovered through the exercise of due diligence and (2) that the facts underlying the claim would demonstrate, "by clear and convincing evidence," that "no reasonable factfinder" would have convicted him of the crime charged. *See Shinn v. Ramirez*, 596 U.S. 366, 381 (2022); §§ 2254(e)(2)(A)(i), (ii) and (B). However, "even if all of these requirements are satisfied, a federal habeas court still is not *required* to hold a hearing or take any evidence. Like the decision to grant habeas relief itself, the decision to permit new evidence must be informed by principles of comity and finality that govern every federal habeas case." *Shinn*, 596 U.S. at 381–82 (emphasis in original).

Section 2254(e)(2) only applies, however, to petitioners who have "failed to develop the factual basis" of their claim. A "failure to develop" is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel. *Williams v. Taylor*, 529 U.S. 420, 432 (2000). Dunay argues he was diligent in developing the record regarding his recusal motion and either Judge McGinnis or the prosecutor failed to disclose the cited emails and the evidence adduced in Case No. 2018-CF-868. (Docket # 45 at 11–12.) The respondent does not address whether Dunay meets this opening clause of failure to develop the facts in the state proceedings. Rather, Respondent argues that Dunay cannot satisfy the requisite statutory criteria because, by pleading no contest to the charges, he has admitted his guilt and thus cannot demonstrate that these facts would establish that no reasonable factfinder would have convicted him of the crimes charged. (Docket # 46 at 23.)

11

As to the transcript of Judge McGinnis' testimony and Judge McGinnis' recusal order, these documents did not exist until October 22, 2024, and November 5, 2024, respectively. In other words, these documents were not even created until after Dunay had exhausted his state court remedies and filed his habeas petition in federal court related to his conviction in Case No. 2015-CF-470. Dunay argues, however, that these documents are relevant as they demonstrate Judge McGinnis' alleged bias during the post-conviction proceedings that occurred years prior. As to the emails from 2018, there would have been no reason for either Dunay to ask, or for the State to turn over, these documents during the proceedings in Case No. 2015-CF-470 as they had no bearing on the charges in that case. But again, Dunay argues these emails establish Judge McGinnis' alleged bias.

Because it was not due to a lack of diligence or fault on Dunay's part that these documents were not made part of the underlying state court record, § 2254(e)(2) does not bar entry of these documents into the habeas record. Thus, I will consider the documents where relevant.

### 1.2 Challenge Under § 2254(d)(2)

Dunay argues that the Wisconsin Court of Appeals' decision affirming the circuit court's denial of his recusal motion was based upon an unreasonable determination of the facts in light of the evidence presented. A petitioner's challenge to a state court decision based on a factual determination under § 2254(d)(2) will not succeed unless the state court committed an "unreasonable error." *Pierce v. Vanihel*, 93 F.4th 1036, 1045 (7th Cir. 2024). Section 2254(e)(1) provides the mechanism for proving unreasonableness and starts with the presumption that a state court's determination of fact is correct. *Id.* "To rebut that presumption, a petitioner must show by clear and convincing evidence that the finding was

unreasonable." *Id.* A state court's decision is factually unreasonable only when it "rests upon fact-finding that ignores the clear and convincing weight of the evidence." *McManus v. Neal*, 779 F.3d 634, 649 (7th Cir. 2015) (internal quotation and citation omitted). This is a "stringent standard"; even if reasonable minds reviewing the record might disagree about the finding in question, "on habeas review that does not suffice to supersede the trial court's determination." *Pierce*, 93 F.4th at 1045 (internal quotations and citations omitted).

The crux of Dunay's argument is that the court of appeals' finding that Dunay "points to no statement or other indication by the circuit court that would suggest the type of deep-seated antagonism necessary to demonstrate bias or impartiality" (Docket # 10-5 at ¶ 16) constitutes an unreasonable determination of the facts in light of the evidence presented. He argues the court of appeals either misstated or failed to consider multiple pieces of evidence demonstrating that Judge McGinnis was in fact biased.

First, Dunay argues that the court of appeals should have addressed that the recusal motion rested not simply on the threats made but on the fact criminal charges were filed against Dunay regarding the threats. (Docket # 45 at 18.) Dunay argues that a "judge (victim) presiding over a defendant (his perpetrator) in *any* case is contrary to due process." (*Id.* (emphasis in original).) Dunay argues that after he was charged in Case No. 2018-CF-868, all of the judges in Outagamie County recused themselves from that case, including Judge McGinnis. (*Id.*) He further asserts that while continuing to preside over Case No. 2015-CF-470, Judge McGinnis was aware of this new criminal case and the fact that he would likely be called as a witness. Dunay argues that Judge McGinnis made various false statements during his post-conviction proceedings to minimize his involvement in the 2018 case and that

13

the new evidence he presents, in the form of the March 20, 2018, and August 21, 2018 emails, confirms Judge McGinnis' alleged misrepresentations.

Specifically, he argues that while Judge McGinnis stated on June 21, 2019, that he had not communicated with the State regarding the 2018 case besides coordinating scheduling (June 21 Tr. 161–62), the August 21, 2018, email—in which Judge McGinnis confirmed to law enforcement through his judicial assistant that he did not consent to the threats—proves otherwise (Docket # 45 at 14–16). Dunay further argues that Judge McGinnis stated during the June 21, 2019, hearing that he could not recall whether Dunay's threats specifically included killing him, or if they included "more just sort of vulgar threats." (June 21 Tr. 168–69.) He contends that the jail counselor's 2018 email specifically states that Dunay threatened to "kill" the judge and Judge McGinnis was provided with this email on March 20, 2018. (Docket # 45 at 19.) Thus, he was aware that the threats were more than just "vulgar."

At the time of the court of appeals' March 23, 2021, decision, the evidence of Judge McGinnis' testimony and subsequent recusal had not yet occurred. It was known, however, that Dunay had been criminally charged based on the threats and that Judge McGinnis would likely be called as a witness in that case. While the court of appeals addressed the fact that Dunay had threatened Judge McGinnis, it did not address the fact that Dunay was subsequently criminally charged based on these threats or the fact that Judge McGinnis would likely be a witness in the subsequent criminal case.

Despite the court of appeals not addressing these facts related to Dunay's subsequent criminal charges, and considering the new evidence Dunay presents regarding the judge's alleged inconsistent statements, trial testimony, and recusal order, habeas relief is nonetheless not warranted on this ground. "[R]ecusal is not automatically—or even ordinarily—required

14

when a defendant threatens a judge." *United States v. Walsh*, 47 F.4th 491, 500 (7th Cir. 2022). The court of appeals addressed this law and applied it to the fact that threats were made. Once more, due process does not require recusal when a defendant threatens a judge; Dunay points to no Supreme Court case holding that recusal is constitutionally required if the "victim" judge becomes a witness in a subsequent case involving the defendant. As will be discussed below when addressing Dunay's § 2254(d)(1) argument, the Supreme Court has stated that "most matters relating to judicial disqualification [do] not rise to a constitutional level." *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 (2009) (quoting *FTC v. Cement Institute*, 333 U.S. 683, 702 (1948)).

Nor does the recusal of the Outagamie County judges in the 2018 case, or even Judge McGinnis' subsequent recusal in the underlying case, demonstrate that recusal was constitutionally required at the outset of the post-conviction proceedings in the 2015 case. Again, the Supreme Court has not held that a judge who is a defendant's "victim" in a subsequent criminal case is constitutionally required to recuse himself under circumstances similar to Dunay's case. Thus, Dunay's argument fails.

Further, the two "new" emails Dunay cites do not show that Judge McGinnis was falsely representing his familiarity with the 2018 case during the post-conviction proceedings in the 2015 case. Judge McGinnis acknowledged during the June 21, 2019, evidentiary hearing that he expected he would be called as a witness during the 2018 case and that he "would expect that [his] testimony is going to be that [he] didn't consent." (June 21 Tr. 162.) The "new" evidence Dunay puts forth is not inconsistent—Judge McGinnis stated that he spoke to law enforcement and did not consent to the threats. (Docket # 1-1 at 4.) Nor does this email indicate that Judge McGinnis was in fact communicating with the State about the

15

case. Judge McGinnis stated that he had spoken to law enforcement, not the district attorney's or the attorney general's offices. (Docket # 1-1 at 4.) Further, the jail counselor's email does not confirm that Judge McGinnis was lying during the June 21, 2019, hearing regarding his knowledge of the specificity of the threats. The evidentiary hearing occurred over a year after the counselor's email was shared with the judge. He did not deny the threat to kill; he simply stated that he could not recall whether the threat included killing. (June 21 Tr. at 168.) Judge McGinnis further agreed, however, that if counsel represented that Dunay made threats to kill him, he would "take it that's true." (*Id.*) Thus, the additional evidence Dunay presents does not alter the outcome of the habeas review analysis.

Next, Dunay argues that the court of appeals misrepresented the underlying facts to "create [the] false narrative that Dunay persistently threatened to kill Judge McGinnis *prior* to the sentencing hearing for the sole purpose to recuse him from the case." (Docket # 45 at 19.) This is incorrect. The court of appeals made no such finding that Dunay made threats for the purpose of judge-shopping. Rather, Dunay had argued that his threats required Judge McGinnis to recuse himself. In countering Dunay's assertion that a threat is sufficient to demonstrate objective bias, the court of appeals explained that if that were the rule, it would allow a defendant to "readily manipulate the system, threatening every jurist assigned until the defendant gets a judge he or she prefers." (Docket # 10-5 at ¶ 17.) Again, there was no unreasonable determination of any facts.

Dunay further asserts that the court of appeals incorrectly attributed to him an argument he never made, namely, that the trial court purposely accelerated the court proceedings to get Dunay into prison as soon as possible. (Docket # 45 at 19.) But Dunay did, in fact, make this argument in his brief. (Answer, Ex. 2, Appellant's Br. at 5–6, Docket

16

# 10-2.) Dunay argued that the trial court was biased under the objective test because the judge had information that Dunay wished to kill him and this gave the judge "important personal reasons" to deny Dunay's motions—namely, keeping him in prison so he could not act on the threats. (*Id.*) The court of appeals rejected this argument, however, finding that "[c]ontrary to Dunay's perception," the trial court "did not accelerate court procedures with the stated purpose of getting Dunay into prison as soon as possible." (Docket # 10-5 at ¶ 16.) Dunay has not shown this is factually incorrect.

Dunay also argues the court of appeals erred by including information related to alleged threats Dunay made to individuals in New Jersey. (Docket # 45 at 20.) Dunay argues that he contests making such threats and was never charged for them. (*Id.*) The court of appeals does cite to the alleged threats made in New Jersey in the background section of the decision. (Docket # 10-5 at ¶ 9.) However, it is not repeated in the analysis, which focuses solely on the threats made to Judge McGinnis. Accordingly, even if these facts were wrongly included in the background, there is no indication that these facts played any role in the court of appeals' decision on the merits of Dunay's recusal claim.

Dunay argues that the court of appeals overlooked significant relevant facts supporting judicial bias during his March 8, 2018, sentencing hearing; the June 21, 2019, evidentiary hearing; the September 4, 2019, decision hearing; and the July 29, 2019, restitution hearing. (Docket # 45 at 20–31.) Dunay points to nearly two dozen facts that he argues the court of appeals overlooked that demonstrate Judge McGinnis' actual bias. (*Id.*) As an initial matter, several of Dunay's statements are not actually factual findings under § 2254(d)(2) but arguments regarding the trial court's legal determinations, including the judge's alleged failure to consider mitigating factors in sentencing (*id.* at 23–24), the judge's refusal to allow Dunay

17

to proceed *pro se* (*id.* at 28), and Judge McGinnis' application of Wisconsin restitution proceedings (*id.* at 29–31). Thus, habeas relief is not warranted under § 2254(d)(2) on these bases.

Dunay's remaining factual findings fall generally into three categories of facts he argues the court of appeals failed to consider that support a finding of judicial bias—the threatening jail calls, the recusal motion, and the contempt findings. First, Dunay argues that while the court of appeals identified Dunay's acknowledgement of the jail call recordings, it overlooked several relevant facts and reasonable inferences from those facts that demonstrate actual bias. (*Id.* at 20–21.) Specifically, Dunay points to Judge McGinnis' awareness of the threats prior to sentencing and to the judge's belief that the threats were serious and that Dunay was a danger, as evidenced by additional security in the courtroom and ordering further appearances by video conference. (*Id.* at 20–24.) The court of appeals does, however, note that Dunay threatened to kill Judge McGinnis while in the Outagamie County jail and that the State provided the judge with copies of these phone calls after the plea hearing. (Docket # 10-5 at ¶ 6.) The court of appeals concluded, though, that judicial rulings alone almost never constitute a valid basis for bias and that threats against judges generally do not require recusal. (*Id.* ¶¶ 14–15.) Dunay fails to demonstrate the court of appeals' determination was based on an unreasonable determination of facts in light of the evidence presented.

Next, Dunay argues the court of appeals overlooked Judge McGinnis' intentional disregard of his recusal motion and failed to address it prior to participating in further post-conviction proceedings. (Docket # 45 at 24–25.) He notes that the court of appeals acknowledged Dunay filed a recusal motion and that the trial court denied all post-conviction motions including the recusal motion following three hearings but he asserts that the court of

18

appeals overlooked that post-conviction counsel had filed the recusal motion to prevent Judge McGinnis from participating at the post-conviction hearings due to a conflict of interest from the threats. (*Id.*) Once again, the court of appeals found that threats against judges generally do not require recusal. Even so, in deciding Dunay's post-conviction motions on September 4, 2019, Judge McGinnis stated that he would decide the recusal motion first, which he did. (Sept. 4 Tr. at 4–14.) Dunay again fails to demonstrate the court of appeals' determination was based on a unreasonable determination of facts in light of the evidence presented.

Finally, Dunay argues that the court of appeals failed to consider facts showing Judge McGinnis' animosity towards Dunay, specifically, through finding him in contempt twice and allegedly misstating the previous record. (Docket # 45 at 27–28.) As to the contempt findings, Judge McGinnis demonstrated extraordinary patience with Dunay despite Dunay's frequent interruptions of the proceedings, oftentimes with highly inappropriate and disrespectful statements to the court and opposing counsel. Dunay argues that Judge McGinnis revealed his deep animosity towards Dunay when finding him in contempt and refusing to accept Dunay's apology as disingenuous. (Docket # 45 at 27.) During the June 21, 2019, evidentiary hearing, although Dunay had used inappropriate and profane language with the judge (calling the judge an "arrogant asshole"), the first contempt finding only came after Dunay interrupted the State's argument by calling the attorney an "asshole" and then stating that the court was "a circus court" and that it was "absolutely ridiculous that [Judge McGinnis] is sitting up there as the judge." (Docket # 10-14 at 191.) Dunay continued interrupting the court with insults against the judge and opposing counsel. (*Id.* at 191–95.) Later in the hearing, Judge McGinnis made a second contempt finding after Dunay continued interrupting the proceedings and calling Judge McGinnis a "piece of shit." (*Id.* at 197–200.)

19

Dunay argues that Judge McGinnis' findings of contempt demonstrate that the judge "was embroiled in a running, bitter controversy with Dunay." (Docket # 10-14 at 27.) On the contrary, Judge McGinnis' contempt findings were well-founded given Dunay's language and behavior in court. As was Judge McGinnis' disbelief regarding the sincerity of Dunay's apology for making the jail threats.

Dunay also argues that Judge McGinnis "fabricated a record" when he stated at the September 4, 2019, hearing that he determined prior to sentencing that he could remain unbiased despite Dunay's threats. (Docket # 45 at 28.) Dunay is correct that Judge McGinnis did not address subjective and objective bias on the record during the sentencing hearing; however, that is because the recusal motion had not yet been filed. The parties argued the recusal motion during the June 21, 2019, evidentiary hearing (Docket # 10-14) and the motion was decided on September 4, 2019 (Docket # 10-16). What Judge McGinnis stated during the September 4, 2019, hearing was that prior to conducting the sentencing hearing in March 2018, he had considered whether he could go forward with sentencing based on Dunay's threats. (Sept. 4 Tr. 10.) He did not state, as Dunay contends, that he created a record at the sentencing hearing that he could remain impartial. (*See* Docket # 45 at 28.) And again, as the court of appeals found, threats against judges generally do not require recusal. Dunay has not shown Judge McGinnis fabricated a record or that an incorrect factual finding was made.

In summary, the Wisconsin Court of Appeals concluded that nothing in the record indicated that Judge McGinnis held deep-seated antagonism towards Dunay. (Docket # 10-5 at ¶ 16.) Dunay has failed to show by clear and convincing evidence that this finding was unreasonable. Habeas relief is not warranted on this ground.

### 1.3 Challenge Under § 2254(d)(1)

Dunay further argues that the court of appeals' decision regarding judicial bias was contrary to clearly established Supreme Court law. (Docket # 45 at 31–43.) The United States Supreme Court has stated that it "is axiomatic that '[a] fair trial in a fair tribunal is a basic requirement of due process.'" *Caperton*, 556 U.S. at 876 (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)). A litigant need not show, as a matter of course, that the judge has actual, subjective bias. *Rippo v. Baker*, 580 U.S. 285, 287 (2017) ("[T]he Due Process Clause may sometimes demand recusal even when a judge ha[s] no actual bias.") (internal quotation and citation omitted). Rather, recusal is required when, "objectively speaking, 'the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.'" *Id.* (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)); *see also Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016) ("The Court asks not whether a judge harbors an actual, subjective bias, but instead whether, as an objective matter, the average judge in his position is likely to be neutral, or whether there is an unconstitutional potential for bias.") (internal quotation and citation omitted).

While the Supreme Court has not clearly defined what it means for the probability of actual bias to be "too high to be constitutionally tolerable," the Court has stated that "the Due Process Clause incorporated the common-law rule that a judge must recuse himself when he has 'a direct, personal, substantial, pecuniary interest' in a case." *Caperton*, 556 U.S. at 876 (quoting *Tumey v. Ohio*, 273 U.S. 510, 523 (1927)). The Court then described a "second instance requiring recusal that was not discussed at common law"; specifically, "in the criminal contempt context, where a judge had no pecuniary interest in the case but was

21

challenged because of a conflict arising from his participation in an earlier proceeding," arising from its previous case, *In re Murchison*, 349 U.S. 133 (1955).

*In re Murchison* involved a judge who examined two individuals to determine whether criminal charges should be brought against them and ultimately charged one individual with contempt and the other with perjury. *Caperton*, 556 U.S. at 880 (citing *In re Murchison*, 349 U.S. at 134–35). The same judge then proceeded to try and convict both individuals. *Id.* The Supreme Court set aside the convictions on the grounds that the judge's earlier participation in the case, including making the decision to charge them, created a conflict of interest when presiding over the trial. *Id.* Even in that situation, however, the Court noted that the disqualifying criteria "cannot be defined with precision" and the court must consider the "judge's prior relationship with the defendant, as well as the information acquired from the prior proceeding." *Id.* at 880–81 (internal quotations and citations omitted).

At bottom, the Supreme Court articulated that "most matters relating to judicial disqualification [do] not rise to a constitutional level." *Id.* at 876 (quoting *FTC,* 333 U.S. at 702). The Court noted that States may choose to adopt recusal standards more rigorous than due process requires and because "the codes of judicial conduct provide more protection than due process requires, most disputes over disqualification will be resolved without resort to the Constitution"; thus, the application of constitutional standards "will . . . be confined to rare instances." *Id.* at 890.

In articulating the standard for judicial bias in Dunay's case, the court of appeals stated that there is a presumption that a judge is free of bias and prejudice and to overcome this presumption, the party asserting bias must show by a preponderance of the evidence that the judge is biased or prejudicial. (Docket # 10-5 at ¶ 12.) As Dunay did not argue Judge

22

McGinnis was subjectively biased, the court of appeals stated that objective bias exists when a reasonable person could question the court's impartiality based on the court's statements, or when there are objective facts demonstrating the judge in fact treated the defendant unfairly. (*Id.* ¶ 13.) The court of appeals further found that recusal is required only if a judge's opinion or remarks display a deep-seated antagonism or favoritism that would make fair judgment impossible. (*Id.* ¶ 15.)

Dunay argues that the Wisconsin Court of Appeals "created its own objective apparent bias and recusal standards" contrary to Supreme Court precedent. (Docket # 50 at 10.) To obtain habeas relief, however, the state court's decision must be contrary to "clearly established" federal law "as determined by the Supreme Court of the United States." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). The "clearly established" phrase refers to holdings, not dicta, of the Court's decisions at the time of the relevant state court decision. *Id.* As the Supreme Court acknowledged, in "most situations, the task of determining what we have clearly established will be straightforward"; however, when the Supreme Court's precedents are not "a model of clarity" and the Supreme Court has not "established a clear or consistent path for courts to follow," the task becomes more difficult. *See id.*

As stated above, a state court's decision is "contrary to" clearly established Supreme Court law if the state court applies a rule that contradicts the governing law set forth by the Supreme Court or if the state court confronts a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrives at a result different from Supreme Court precedent. *Id.* at 73. Dunay fails to demonstrate the court of appeals' decision was contrary to clearly established Supreme Court law. He presents no Supreme Court case stating that due process requires judicial recusal when a criminal defendant threatens a judge or when

a criminal defendant is charged for threatening the judge. Nor has he shown that the rule applied by the court of appeals in his case contradicts the governing Supreme Court law. Beyond finding recusal required in certain specific circumstances, such as when a judge has "a direct, personal, substantial, pecuniary interest" in a case or when a judge had prior involvement in a criminal case such that he becomes "a judge in his own case," *see Caperton*, 556 U.S. at 876, 880, the Court has stated that recusal is only required when objectively, the probability of actual bias is too high to be constitutionally tolerable, *Rippo*, 580 U.S. at 287. Dunay has not shown that the court of appeals' stated rule contradicts any governing law set forth by the Supreme Court.

Dunay further argues that the court of appeals unreasonably applied Supreme Court law to the relevant facts. (Docket # 45 at 36–43.) Dunay fails here, too. Again, the Supreme Court counseled that only in "rare instances" will matters related to judicial recusal rise to a due process violation. *See Caperton*, 556 U.S. at 876, 890. The court of appeals noted that absent unique or extraordinary circumstances, threats against a judge do not mandate a judge's recusal. (*Id.* ¶¶ 15, 17.) Utilizing these standards as applied to the facts of this case, the court of appeals concluded that Dunay's case was not sufficiently unique or extraordinary to warrant recusal as a matter of law. (*Id.* ¶¶ 17–18.) This is not an unreasonable conclusion. For these reasons, Dunay is not entitled to habeas relief on his judicial bias claim.

### 2. *Ineffective Assistance of Appellate Counsel*

Dunay argues that his appellate counsel was ineffective for raising only the recusal claim with the Wisconsin Court of Appeals and failing to raise other claims Dunay identified, including plea withdrawal, resentencing, denial of restitution, and failure to provide requested restitution discovery. (Docket # 34.) Respondent argues that Dunay's ineffective assistance

24

claim is doubly defaulted because he failed to demonstrate in the court of appeals that these arguments were clearly stronger than his claims on direct review and failed to timely petition for review in the Wisconsin Supreme Court. (Docket # 46 at 21–22.)

### 2.1 Procedural Default

Respondent argues that Dunay's ineffective assistance claim is procedurally defaulted because he failed to timely file a petition for review in the Wisconsin Supreme Court challenging the court of appeals' denial of his *State v. Knight*, 168 Wis. 2d 509, 484 N.W.2d 540 (1992) petition. Habeas petitioners must fully exhaust their claims before the state courts before presenting those claims to the federal courts. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This includes seeking discretionary review before the state's highest court. *Id.* Failure to timely present one's claims before the state's highest court results in a procedural default of those claims. *Id.* at 848.

The Wisconsin Supreme Court denied Dunay's petition for review of his *Knight* petition as untimely filed. (Supp. Answer, Ex. 20, Docket # 30-4.) The supreme court found that the court of appeals issued its decision denying Dunay's *Knight* petition on October 23, 2024. (*Id.*) Dunay subsequently filed a motion for reconsideration on November 15, 2024, which the court of appeals denied on December 9, 2024. (*Id.* at 65.) Dunay filed an additional motion for reconsideration on December 19, 2024, which the court of appeals denied on December 26, 2024. (*Id.*) Pursuant to Wis. Stat. § 808.10(1), a petition for review must be filed within 30 days of the date of the court of appeals' decision; however, the 30-day deadline is tolled by the timely filing of a motion for reconsideration, Wis. Stat. § 808.10(2). A motion for reconsideration is timely if it is filed within 20 days after the court of appeals' decision. *Id.*

The supreme court determined that Dunay's first reconsideration motion was timely filed (applying the prison mailbox rule) and thus the time to petition for review was tolled until 30 days after the December 9, 2024, order denying the reconsideration motion, or until January 8, 2025. (Docket # 30-4 at 66.) The supreme court found that Dunay's second reconsideration motion, filed December 19, 2024, was untimely as it was filed more than 20 days after the October 23, 2024, decision and thus did not toll the petition deadline. (*Id.*) The supreme court found that Dunay's petition for review was delivered to prison authorities for mailing on January 25, 2025, well after the January 8, 2025, deadline. (*Id.*) As such, the court denied his petition for review as untimely.

Dunay contends that he has not procedurally defaulted his claim because his *Knight* petition, filed pursuant to Wis. Stat. § 809.51, is a prerequisite to filing a supervisory writ for habeas corpus in the Wisconsin Supreme Court pursuant to Wis. Stat. § 809.71. (Docket # 50 at 21.) He argues that because § 809.71 provides that a "person seeking a supervisory writ from the supreme court shall first file a petition for a supervisory writ in the court of appeals under s. 809.51 unless it is impractical to seek the writ in the court of appeals," his § 809.71 petition, filed on April 16, 2025 (Supp. Answer, Ex. 22, Docket # 30-6), serves as a proper "appeal" of the *Knight* petition. Dunay is incorrect. Pursuant to Wis. Stat. § 808.10(1), a decision of the court of appeals "is reviewable by the supreme court *only* upon a petition for review granted by the supreme court." *Id.* (emphasis added). Wisconsin courts are clear that a "petition for a writ of supervision is not a substitute for an appeal." *State ex rel. Dressler v. Cir. Ct. for Racine Cnty., Branch 1*, 163 Wis. 2d 622, 630, 472 N.W.2d 532, 536 (Ct. App. 1991); *see also Norris v. Kemper*, No. 16-CV-212, 2017 WL 3727388, at *4 (W.D. Wis. Aug. 28, 2017) (finding petition for supervisory writ did not fairly present issues to supreme court, noting that

26

"petitioner could have sought direct review of the adverse decision by the court of appeals in the supreme court, but he did not and thus "did not properly exhaust his state court remedies"). Thus, Dunay's ineffective assistance of counsel claim is procedurally defaulted.

A procedural default bars federal habeas relief unless the petitioner can demonstrate both cause for and prejudice stemming from that default or he can establish that the denial of relief will result in a miscarriage of justice. *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004). Cause for a default is ordinarily established by showing that some type of external impediment prevented the petitioner from presenting his federal claim to the state courts. *Id.* Prejudice is established by showing that the violation of the petitioner's federal rights worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions. *Id.* Alternatively, to establish a miscarriage of justice, the petitioner "must show that he is actually innocent of the offense for which he was convicted, i.e., that no reasonable juror would have found him guilty of the crime but for the error(s) he attributes to the state court." *Id.*

Dunay argues that he was in prison segregation between November 26, 2024, and December 30, 2024, and staff refused to provide him with legal materials and access to the law library to perform necessary legal research; as such, he contends that prison staff caused an external impediment to compliance with the state procedural rule. (Docket # 50 at 21; Supp. Answer, Ex. 21, Docket # 30-5 at 3.) When he was released from segregation, between December 30, 2024, and January 8, 2025, he was limited to four 45-minute periods at the law library due to the holidays. (Docket # 30-5 at 4.)

Claims of cause based on lack of access to a library are considered on a case-by-case basis. *Williams v. Buss*, 538 F.3d 683, 686 (7th Cir. 2008). On this record, Dunay cannot rely

on his lack of library access to establish cause. He acknowledges that even without library access and while confined to segregation, Dunay received the court of appeals' decisions and was able to file a motion for reconsideration. Furthermore, while Dunay was dissatisfied with the amount of time allotted for law library use after his release from segregation, he was not prevented from conducting his legal research. Thus, Dunay cannot show that an external impediment prevented him from filing the petition for review. Dunay does not attempt to establish prejudice or actual innocence. Thus, Dunay's procedural default bars habeas relief on this claim.

### 2.2 Merits of Ineffective Assistance of Appellate Counsel Claim

Even if Dunay's ineffective assistance claim was not procedurally defaulted, it fails on the merits. The proper standard for evaluating whether appellate counsel was ineffective on habeas review is the familiar two-pronged analysis of deficient performance and prejudice enunciated in *Strickland v. Washington,* 466 U.S. 668 (1984). *Makiel v. Butler*, 782 F.3d 882, 897 (7th Cir. 2015); *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Counsel's performance is deficient when it falls "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. When the petitioner is challenging the selection of issues presented on appeal, "appellate counsel's performance is deficient under *Strickland* only if she fails to argue an issue that is both 'obvious' and 'clearly stronger' than the issues actually raised." *Makiel*, 782 F.3d at 897 (internal citation omitted). This is because appellate counsel is not required to raise every non-frivolous issue on appeal. *Id.* A petitioner demonstrates the requisite prejudice "only when appellate counsel fails to raise an issue that 'may have resulted in a reversal of the conviction, or an order for a new trial.'" *Winters v. Miller*, 274 F.3d 1161, 1167 (7th Cir. 2001) (internal citation omitted). In other words, "there must be a reasonable probability that the issue not

28

raised would have altered the outcome of the appeal had it been raised." *Lee v. Davis*, 328 F.3d 896, 901 (7th Cir. 2003).

Dunay argues that the Wisconsin Court of Appeals' application of *Strickland* was contrary to federal law, or alternatively, was unreasonably applied to the facts of his case. (Docket # 50 at 19.) Dunay has not shown that the court of appeals cited the wrong legal standard. The court correctly cited the law for deficient performance and prejudice, including the "clearly stronger" standard applied to deficient performance based on appellate counsel's alleged failure to raise particular claims. (Docket # 30-2 at 3–4.) Dunay argues that it is unreasonable to apply the "clearly stronger" standard under *Strickland* when post-conviction counsel is the same person as appellate counsel and counsel raised the allegedly meritorious issues during post-conviction proceedings but then abandoned them on direct appeal. (Docket # 50 at 19–20.) Dunay essentially argues that if counsel believed certain arguments meritorious enough to raise during post-conviction proceedings, his performance is deficient for "abandoning" the claims on direct appeal. But this is precisely what appellate counsel must do on appeal, regardless of whether it is the same person as post-conviction counsel— winnow out the weaker arguments and pursue the stronger ones.

The court of appeals determined that Dunay failed to show that the issues raised during his postconviction proceedings were clearly stronger than the recusal issue raised. (Docket # 30-2 at 6–7.) The court also concluded that even presuming deficient performance, Dunay failed to establish that but for counsel's purported deficiency, the outcome of the appeal would have been different. (*Id.* at 7.) Dunay does not explain how this finding contravenes *Strickland*, nor does he address how the alleged failure to raise these issues would have resulted in a different outcome on the appeal, beyond summarily asserting that these issues would have

29

"provided Dunay some relief from his conviction." (Docket # 50 at 20.) Thus, even if Dunay's ineffective assistance of appellate counsel was not procedurally defaulted, it fails on the merits. Habeas relief is not warranted on this basis.

## CERTIFICATE OF APPEALABILITY

According to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, and n.4).

When issues are resolved on procedural grounds, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Each showing is a threshold inquiry; thus, the court need only address one component if that particular showing will resolve the issue. *Id.* at 485.

Jurists of reason would not find it debatable that Dunay is not entitled to habeas relief. Thus, I will deny Dunay a certificate of appealability. Of course, Dunay retains the right to seek a certificate of appealability from the Court of Appeals pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that Dunay's petition for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**.

**IT IS ALSO ORDERED** that a certificate of appealability shall not issue.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 24th day of June, 2026.

BY THE COURT

NANCY JOSEPH
United States Magistrate Judge

31